

FILED
OCT 11 2011
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SALMONS, INC.,
    Plaintiff,
v.                                           Civil Action No. 2:10cv72
FIRST CITIZENS BANK & TRUST CO.,
    Defendant.

## OPINION AND ORDER

On September 30, 2011, Plaintiff Salmons, Inc. filed a Motion in Limine to Exclude All Evidence Regarding Jim Salmon's Past Bankruptcy and Criminal Conviction, to which Defendant responded on October 5, 2011. Also on September 30, 2011, Defendant First Citizens Bank filed a Motion in Limine Regarding Any Alleged Damages After January 23, 2008. On October 5, 2011, Defendant also filed a Motion in Limine Regarding Course of Dealing and Secretly Altered Documents, which Defendant subsequently withdrew. For the reasons stated herein, Plaintiff's Motion to Exclude Evidence of Jim Salmon's Bankruptcy and Criminal Conviction is **DENIED** and Defendant's Motion Regarding Any Alleged Damages After January 23, 2008 is **DENIED**.

### I. FACTUAL HISTORY

The instant litigation arises out of claims filed by Plaintiff Salmons, Inc., a grain dealer, against First Citizens Bank & Trust, Co., for violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") arising out of a loan that Defendant made to Plaintiff in January 2008. Between 2004-2008, Defendant extended more than $3 million in loans to Plaintiff through a series of seventeen separate transactions. Plaintiff claims that it was damaged

by Defendant's taking of a "blanket lien" on its equipment, which prevented Plaintiff from obtaining funding from alternative lenders in order to satisfy its margin calls in February and March 2008.

## II.    ANALYSIS

### A. *Plaintiff's Motion to Exclude Evidence Regarding Jim Salmon's Past Bankruptcy and Criminal Conviction*

In 1988, Jim Salmons ("Salmons") was convicted of bank fraud stemming from his submission of false inventory reports to one of his lenders. Related to his conviction, Salmons filed for bankruptcy in 1987. Defendant apparently intends to offer evidence of Salmons' conviction and bankruptcy through its expert witness, Joseph Monahan, which Plaintiff contends would be an admission of improper character evidence. Specifically, Plaintiff wishes to exclude any testimony by Defendant's expert that banks in the Hampton Roads area would have been aware of Salmons' criminal past and that this would have made it difficult for him to obtain loans from such banks.

Plaintiff relies on Federal Rules of Evidence 404(b), 609(b) and 702 to support its claim that the Court should exclude all evidence and prohibit Defendant from making any argument or asking any questions that would elicit information regarding either Jim Salmons' past bankruptcy or his criminal conviction. Defendant counters that such evidence is admissible as relevant to First Citizens' defenses and to impeach Salmons' credibility, which it contends is central to the resolution of this case.

#### 1. Use of Salmons' Conviction and Bankruptcy for Impeachment Purposes

Federal Rule of Evidence 609(a)(2) states that, "[f]or the purpose of attacking the character for truthfulness of a witness," prior convictions for crimes involving dishonesty "*shall*

be admitted" Fed. R. Evid. 609(a)(2). The Fourth Circuit has determined that criminal fraud is one of the "narrow class of crimes" described under Rule 609(a)(2) which "bear[s] directly upon the witness' propensity to testify truthfully." United States v. Cunningham, 638 F.2d 696, 698-99 (4th Cir. 1981). Thus, convictions for fraud are "automatically admissible for purposes of attacking a witness' credibility" and a court has "no discretion to exclude them." Christovich v. Pierce, No. 02-1363, 2003 WL 932467, *2 (4th Cir., March 10, 2003). However, Rule 609(b) makes inadmissible for impeachment purposes any conviction more than ten years old unless the court determines, "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances outweighs its prejudicial effect." Fed. R. Evid. 609(b).

Rule 609(b) thus establishes a robust presumption against admitting stale convictions. Indeed, "[d]eparture from [this] prohibition is permitted 'very rarely and only in exceptional circumstances.'" Bizmark, Inc. v. Kroger Co., 994 F. Supp. 726, 728 (W.D. Va. 1988). To overcome this strong presumption, the proponent of the conviction "bears the burden of establishing specific . . . facts and circumstances that support the probative value of the conviction such that it substantially outweighs its prejudicial impact." United States v. Beahm, 664 F.2d 414, 418 (4th Cir. 1981).

Defendant claims that Plaintiff's claim depends on its ability to prove that Salmons had oral conversations with Defendant that contradicted the express language of the Loan Commitment, and thus that Salmons' credibility or lack thereof is a critical issue in this case. Specifically, Defendant claims that because Plaintiff has alleged that Defendant engaged in intentional deception, Plaintiff's claim "hinges on whether the jury believes Jim Salmons' testimony as to his dealings with the lender or the testimony of First Citizens' witnesses."

In assessing whether a stale conviction should be admitted, courts consider the following factors: (i) the impeachment value of the conviction, (ii) its immediacy or remoteness, (iii) the degree of potential prejudice it portends, (iv) the importance of that witness' testimony and (v) the salience of the credibility issue in the circumstances of the particular case. United States v. Brito, 427 F.3d 53, 64 (1st Cir. 2005). Where a witness' credibility is "highly relevant" to disputed issues in the case, courts have been more willing to admit stale convictions. See Zinman v. Black & Decker, Inc., 983 F.2d 431, 434 (2d Cir. 1993) (affirming district court's admission of plaintiff's 16-year-old conviction for Medicare fraud in a products liability suit); United States v. Spero, 625 F.2d 779, 781 (8th Cir. 1980) (upholding admission of a 22-year-old conviction because "the case had narrowed to the credibility of two persons the accused and the accuser and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed"); Herbst v. L.B.O. Holding, Inc., 783 F. Supp. 2d 262 (D.N.H. 2011) (admitting defendant's 12-year-old conviction for mail fraud on the grounds that defendant's testimony was of great importance and the conviction "demonstrated a willingness to defraud others to improve his own financial situation"). Moreover, some courts have determined that the risk of unfair prejudice is lower in a civil case than in a criminal case. Herbst, 783 F.Supp.2d 262.

Although Salmons' conviction is twenty-three years old, and although there is always a risk of prejudice involved with admitting a prior conviction, we find that Salmons' testimony and credibility are essential to Plaintiff's ability to prove its case. This case presents a rare circumstance in which the probative value of admitting a stale conviction substantially outweighs the potential for unfair prejudice. We thus hold that evidence of Salmons' prior conviction and bankruptcy is admissible for the purposes of impeachment.

### 2. Use of Salmons' Conviction and Bankruptcy as Direct Evidence

Defendant also wishes to introduce Salmons' conviction and bankruptcy as direct evidence on the issue of whether Defendant's alleged fraudulent conduct was the proximate cause of Plaintiff's damages. Specifically, Defendant argues that the conviction and bankruptcy show that there were valid reasons, other than a lack of collateral due to Defendant's blanket lien on Plaintiff's equipment, why Plaintiff could not obtain funding from other lenders to cover its margin calls in February and March 2008. Plaintiff responds that the probative value of Salmons' twenty-three year old conviction and bankruptcy is "substantially outweighed by danger of unfair prejudice, confusion or the issues, and misleading the jury." Fed. R. Evid. 403.

A court's discretion to exclude evidence under Rule 403 is "narrowly circumscribed." United States v. Johnson, 415 Fed. Appx. 495, 504 (4th Cir. 2011). "Rule 403 is an extraordinary remedy which should be used only sparingly because it permits the trial court to exclude concededly probative evidence." United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989). Evidence of Salmons' prior conviction and bankruptcy are undoubtedly probative on the question of proximate cause. Evidence that Plaintiff's conviction for bank fraud and subsequent filing for bankruptcy may have influenced its decision not to seek alternative funding once Defendant refused to extend any further loans is directly relevant to First Citizens' defenses in this case. Where prejudice is concerned, we acknowledge that introduction of Salmons' conviction and bankruptcy carries some risk of prejudice. However, the relevant inquiry is whether such evidence is *unfairly* prejudicial. We find that it is not. Plaintiff itself has raised the issue of why it could not obtain a loan and has directed the blame toward Defendant. Thus, evidence of Salmons' conviction and bankruptcy shall be admissible as direct evidence.

### 3. Introduction of Salmons' Conviction and Bankruptcy Through Expert Testimony

Plaintiff specifically seeks to exclude the introduction of Salmons' conviction and bankruptcy through the use of expert testimony on the grounds that such a proffer violates Federal Rule of Evidence 702. Rule 702 requires that expert testimony be based on sufficient facts and data, that it be the product of reliable principles and methods, and that the expert reliably applied these principles and methods to the facts. Fed. R. Evid. 702. The proposed testimony must be based on "more than subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-90 (1993).

Plaintiff contends that the opinion testimony of Defendant's expert, Joseph Monahan, fails to meet Rule 702's threshold reliability requirements. In support of this contention, Plaintiff points to Monahan's own deposition testimony, in which he stated that he had not inquired of any bank as to whether it knew of Salmons' conviction or whether such knowledge would have impacted its decision to extend a loan. Rather, Monahan stated that he based his opinion on his "knowledge of the situation and how closely knit the Hampton Roads banking community is." Plaintiff thus contends that Monahan has "failed to explain how his experience led to the conclusion he reached, why his experience alone was a sufficient basis for his conclusion, and how he reliably applied his experience to the relevant facts." Moreover, Plaintiff states that, because actually attempting to ascertain whether Hampton Roads banks knew of Salmons' conviction or bankruptcy is a more reliable means of verifying Defendant's assertion of the same than is expert testimony, that the expert testimony should be excluded. Clark v. Takata Corp.,

192 F.3d 750, 758 (7th Cir. 1999) (where reliable methods of verification are available, an expert may not "base his opinion merely on experience or training").

Defendant responds by citing a slew of cases in which the Fourth Circuit and other courts have held that an expert may testify relying "solely or primarily on experience." See, e.g., United States v. Batts, 2006 WL 712758 (4 Cir. March 21, 2006); FDIC v. First Interstate Bank of Des Moines, 885 F.2d 423, 435 (8th Cir. 1989) (allowing expert testimony "as to the way in which experienced bank personnel would view [a stockholder's] transactions"); National Jockey Club v. Ganassi, 740 F. Supp. 2d 950 (N.D. Ill. 2010) (allowing expert testimony based on the expert's "extensive experience in relevant aspects of the banking industry" with respect to whether defendant breached a guaranty). Defendant relies on these cases to support its assertion that because its expert worked as a "senior credit officer" for a Hampton Roads Bank for fifteen years and learned from his contacts in the banking community about Salmons' criminal conviction, he is qualified to opine at trial that Salmons would have had trouble obtaining alternative financing notwithstanding Defendant's blanket lien.

At this time, the Court is not convinced that expert testimony is a reliable means of introducing evidence that Salmons' prior conviction and bankruptcy would have inhibited his ability to secure alternative sources of funding in January through March 2008. This is in light of the fact that there is an alternative and more reliable means of proving Defendant's defense as to proximate cause: namely, assessing whether Hampton Roads area banks *actually* had knowledge of Salmons' past and whether such knowledge would have affected their decision to extend funds to Plaintiff. A question arises as to how far back does a reasonable loan officer look into a borrower's past to determine the borrower's reliability to repay a loan and to present truthful accounting data for a loan. We thus reserve judgment on whether or not Plaintiff's

expert may testify on this issue until after we have had an opportunity to question Defendant's expert regarding his qualifications to testify on such matters and the bases for his conclusions.

For the reasons stated herein, Plaintiff's Motion in Limine is **DENIED**. The Court **RESERVES RULING** on the issue of whether evidence of Salmons' prior conviction and bankruptcy may be introduced through testimony by Defendant's expert.

### B. *Defendant's Motion Regarding Damages After January 23, 2008*

In its Third Amended Complaint, Plaintiff seeks damages for losses it suffered when its margin accounts were liquidated on February 27, 2008, and March 3, 2008. Defendant states that Plaintiff knew no later than January 23, 2008, that Defendant would not make any further loans to Plaintiff, but that Plaintiff nonetheless did not attempt to obtain alternative funds to meet its margin calls. Defendant claims that it was Plaintiff's decision not to seek additional funding and not to liquidate its positions in the futures market to reduce or eliminate potential future margin calls that led to Plaintiff's post-January 23, 2008, losses, and not Defendant's blanket lien on Plaintiff's assets. Defendant thus seeks to exclude any evidence of Plaintiff's losses sustained on February 27, 2008, and March 3, 2008, as irrelevant, lacking in foundation, overly speculative, and unfairly prejudicial.

Defendant's arguments in support of this Motion are nearly identical to those offered in support of its Motion for Summary Judgment. As we stated in our denial of Defendant's Motion for Summary Judgment, whether Defendant's alleged wrongdoing was the proximate cause of Plaintiff's losses are questions of fact for a jury to decide. The facts are clearly in dispute: Plaintiff claims that Defendant's blanket lien on its equipment precluded it from obtaining alternative funding to cover its margin calls, whereas Defendant claims that Plaintiff's failure to apply for alternative funding was the cause of its injuries. Moreover, Plaintiff claims that it

signed over the roughly $3 million of collateral to Defendant on Defendant's representation that it would continue to extend funds through which Plaintiff could meet future margin calls. Pl.'s Mem. in Opp. to Def.'s Mot. in Limine <u>Regarding Any Alleged Damages</u> at 2. Defendant flatly refutes this. Where the facts are contested as such, resolution is not appropriate at the pre-trial stage. Therefore, Defendant's Motion in Limine <u>Regarding Any Alleged Damages After January 23, 2008</u> is hereby **DENIED**.

The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED.**

Norfolk, Virginia

/s/
Robert G. Doumar
Senior United States District Judge

October 10, 2011